IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JOHNNY SIDES, #116653,      )
      )
      Plaintiff,      )
      )
      v.      )      CASE NO. 2:04-CV-769-WKW
      )      [WO]
      )
GWENDOLYN MOSLEY, *et al.*,      )
      )
      Defendants.      )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I. INTRODUCTION**

This 42 U.S.C. § 1983 action is before the court on an amended complaint filed on February 23, 2005 by Johnny Sides ["Sides"], a state inmate, against Donal Campbell ["Campbell"], former commissioner of the Alabama Department of Corrections, Gwendolyn Mosley ["Mosley"], the warden of Easterling Correctional Facility ["Easterling"], Kenneth Jones ["Jones"], a deputy warden at such facility, Ed Sasser ["Sasser"], an investigator with the Alabama Department of Corrections, Jeffery Knox ["Knox"], Anthony Williams ["Williams"], Michael Wallace ["Wallace"], Nathaniel Lawson ["Lawson"], and officer Wilson, all correctional officers at Easterling, Ronald Cavanaugh ["Cavanaugh"], director of medical treatment for the Alabama Department of Corrections, Prison Health Services, Inc., the contract medical care provider for the state prison system, and Jean Darbouze, a

medical doctor at Easterling.[1]

In the amended complaint, Sides asserts that the defendants deprived him of due process and equal protection in a disciplinary proceeding, failed to protect him from attack by another inmate, denied him adequate medical treatment for injuries sustained in this attack, and subjected him to cruel and unusual punishment. Sides seeks injunctive relief, a declaratory judgment and monetary damages.

The defendants filed special reports and supporting evidentiary materials addressing the claims presented by Sides in the amended complaint. Pursuant to the orders entered in this case, the court deems it appropriate to treat these reports as motions for summary judgment. *See Order of April 6, 2005 - Court Doc. No. 73*. Thus, this case is now pending on the defendants' motions for summary judgment. Upon consideration of such motions, the evidentiary materials filed in support thereof and Sides' response in opposition to the motions, the court concludes that the defendants' motions for summary judgment are due to be granted.

## II. FACTS[2]

On the morning of 14 May 2004, a physical altercation ensued between Sides and his

---

[1] In accordance with the orders entered herein, this case is pending "**only on the claims presented and against the defendants listed in the amended complaint . . .**" filed on February 23, 2005. *Order of November 17, 2004 - Court Document No. 31* at 2 (emphasis in original).

[2] The facts are gleaned from the amended complaint and the undisputed evidentiary materials submitted by the defendants in support of their special reports.

cell mate, Davion Turner ["Turner"], over whether to open or close the window in their cell.
At approximately 10:00 a.m., Sides reported to the cubicle officer in his dorm, Michael
Wallace, and requested to speak with a supervisor regarding a problem in the dorm.  Wallace
immediately notified his superior officer, Sgt. Nathaniel Lawson, of Sides' compliant and
Lawson requested that Wallace send Sides to the shift commander's officer for questioning.
Sides reported to the shift commander's office where Lawson interviewed Sides.  Sides
advised Lawson that earlier that morning he and Turner engaged in a fight over the window
in their cell.

Lawson conducted an investigation of Sides' allegation.  During questioning, Turner
stated that he and Sides had argued about the window but denied  that a fight had occurred.
Lawson interviewed other inmates and prepared a report including the following facts:

> [The] inmates reported to Sgt. Lawson that Inmates Sides and
> Turner were fighting around 8:30 A.M. about the window.  The
> inmates reported that Inmate Turner wanted the window open
> and Inmate Sides wanted the window closed.  Sgt. Lawson
> questioned Inmate Turner again about the incident.  Inmate
> Turner admitted to fighting with inmate Sides ... Sgt. Lawson
> verbally reprimanded both inmates for their negative behavior.
> At approximately 11:10 A.M., Officer Robert Wilkins escorted
> Inmate Sides to the Health Care Unit.  Inmate Sides was
> examined and treated by Nurse Pearl McKinnon ...  At
> approximately 11:20 A.M., Inmate Sides was released from the
> Health Care Unit back to Officer Wilkins....  Inmate Sides and
> Turner were placed in Administrative Segregation pending
> disciplinary action for rule violation #35 - Fighting without a
> weapon." *Correctional Defendants' Exhibit 1 to the Affidavit of*
> *Gwendolyn C. Mosley - Institutional Incident Report ECF-04-*
> *549* at 2.

Upon arrival at the health care unit, Sides advised the nurse that he had "been in a

3

fight [and] got some teeth knocked loose.  I feel like my shoulder is out of joint.  I have a

knot to the left side of my jaw."  *Correctional Defendants' Exhibit 1 to the Affidavit of*

*Nathaniel Lawson - May 14, 2004 Emergency Record of Medical Treatment for Johnny*

*Sides*.   During Nurse McKinnon's thoroughly examination and evaluation of Sides'

condition, she observed that he ambulated to the health care unit under his own power and

appeared in good condition.  She further detected the following:

> [N]umerous cavities" and an "abcess . . . to back tooth" on the
> lower "left side of mouth .   .   [no] ... knot to left [lower] side
> of jaw.  [No] trauma noted to face.  Skin color [within normal
> limits].  Has piece of broken tooth on person.  [Range of motion]
> to [right] shoulder good.  Both hand grips good & strong.
> Redness noted to back of [right] arm & [upper] back.

*Id*.

Based on her observation of the decay in Sides' mouth, McKinnon referred Sides to

the dental assistant for evaluation.  After their evaluations of Sides, health care personnel

deemed his condition "satisfactory" and released him to the custody of correctional officials

for return to the prison population.  *Id*.  They also scheduled a dental appointment for him,

ordered X-rays of his left arm and jaw, and prescribed a pain reliever and antibiotic in

response to their observations of Sides' condition.  *Id*.

On 17 May 2004, Sides underwent X-rays of his left shoulder and jaw (mandible).

The two radiological views of Sides' left shoulder revealed "[n]o fracture, dislocation,

arthritis or bone lesion.  IMPRESSION:  Normal Shoulder."  *Inmate Medical Records of*

*Johnny Sides - Radiology Services Report for May 17, 2004 X-Rays*.  With respect to the

4

views of Sides' mandible, the findings indicated "no evidence of acute fracture or subluxation.  There is evidence of significant caries [or tooth decay] in the remaining teeth.  IMPRESSION:  No displaced fracture."  *Id*.

The records before this court indicate that medical personnel evaluated and treated Sides each time he reported to the health care unit with complaints.[3]  The specific treatment prescribed depended upon their observations and evaluations of Sides' condition.  To ensure continuous monitoring and evaluation of Sides' hypertension, medical personnel placed Sides in the chronic care clinic concomitant to this condition.  Moreover, each time Sides complained about medical problems, attending personnel evaluated and treated him consistent with their assessment of his condition.

Dr. Darbouze and other attending physicians routinely and consistently prescribed various medications for treatment of Sides' numerous complaints regarding diarrhea, constipation, hemorrhoids, chest pain, hypertension, boils and leg pain.  Additionally, medical personnel ordered profiles, laboratory tests, x-rays, echocardiograms and other substantive treatment when they deemed such necessary upon evaluation of Sides' complaints.  With respect to requests for dental treatment, medical personnel regularly referred Sides to the dental clinic for appropriate evaluation.

The medical records demonstrate that Sides has suffered from severe dental problems since his incarceration in the Alabama prison system.  He is missing several teeth, and he has

---

[3]The medical records are identified in the file as *Exhibit A to the April 5, 2005 Special Report of the Medical Defendants*.

numerous fillings.  After he was screened, dental personnel determined that his condition after the assault at issue did not require emergency dental treatment.  The screening assistant therefore scheduled Sides for a dental appointment.

On 10 August 2004, Dr. Marvin West, a dentist at Easterling, extracted a tooth from Sides and prescribed Motrin to treat his pain.  Dr. West advised against additional extractions at that time but indicated that he would subsequently perform the necessary extractions.  On 16 August 2004, Sides complained of mouth pain and "a root bone ... growing through left gum."  *August 16, 2004 Sick Call Request*.  Based on this request, Dr. West examined Sides on 23 August 2004 and determined that his condition did not warrant invasive treatment.  Dr. West renewed Sides' prescription for Motrin and added a prescription for penicillin.

On 14 September 2004, Dr. West referred Sides for an additional tooth extraction and performed a follow-up examination on 23 September 2004.  He renewed the Motrin prescription again and scheduled the tooth extraction for 12 October 2004.  Sides consented to this procedure, and the extraction was performed according to Dr. West's instructions.

In addressing the medical treatment provided to Sides, Dr. Darbouze states that:

> ... Mr. Sides has been seen and evaluated by the medical or nursing staff, and has been referred to an appropriate care provider and given appropriate care, each time he has registered any health complaints at Easterling.
>
> It is my understanding that Mr. Sides has made a complaint in this case regarding medical treatment he received following a fight he was involved in on or about May 14, 2004. Following the fight, Mr. Sides complained to Nurse McKinnon of mouth and shoulder pain.  I examined Mr. Sides and discovered that he had a cracked tooth which was loose.  I subsequently ordered an x-ray for his left shoulder and his left

6

jaw. The x-rays were negative for injury. I also evaluated Mr. Sides' shoulder and noted that he exhibited good range of motion.

I prescribed appropriate pain medication and antibiotics. I also scheduled an appointment for Mr. Sides to see Dr. Marvin West, a dentist at Easterling. Mr. Sides' dental complaints have been addressed by Dr. West ...

Mr. Sides has also made a complaint concerning the treatment of various ailments, including diarrhea, constipation, hemorrhoids and boils. All of these ailments have been treated in an appropriate and timely manner.

*Exhibit B to the April 5, 2005 Special Report of the Medical Defendants - Affidavit of Dr.*

*Jean Darbouze* at 2.


## III.  STANDARD OF REVIEW

To survive the defendants' properly supported motions for summary judgment, Sides is required to produce some evidence which would be admissible at trial supporting his constitutional claims. *See* Rule 56(e), *Federal Rules of Civil Procedure*. Specifically, he must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990).

A plaintiff's conclusory allegations do not provide sufficient evidence to oppose a

motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-557 (11th Cir. 1984). Thus, when a plaintiff fails to make a showing sufficient to establish the existence of an element essential to his case, and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

To demonstrate a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving part, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Consequently, where all the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (summary judgment is appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to any material fact); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (to establish a genuine issue of material fact, the

8

nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party, and pro se complaints are entitled to liberal interpretation by the courts, a pro se litigant does not escape the burden of establishing a genuine issue of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  In this case, Sides has failed to demonstrate that there is a genuine issue of material fact in order to preclude summary judgment.  *Matsushita*, *supra*.


## IV.  DISCUSSION OF CLAIMS FOR RELIEF

### A.    *Due Process in Disciplinary Proceeding*

As a result of the physical altercation on 14 May 2004 between Sides and Turner, Wallace charged Sides with a violation of Rule #35, fighting without a weapon. *Correctional Defendants' Exhibit 1A to the Affidavit of Gwendolyn C. Mosley - Disciplinary Report 04-246* at 1.  Correctional officer Canty served Sides with notice of the charge lodged against him and the date for the disciplinary hearing.  Sides acknowledged receipt of the notice and advised that he did not plan to call witnesses.

At the hearing, the arresting officer testified that Sides "admitted to fighting with inmate Turner about the window" in their cell, and Sides acknowledged that he violated the disciplinary rule.  *Id*. at 1, 2.  The hearing officer pronounced Sides guilty of violating Rule #35 as charged.  The hearing officer based his findings of fact on the testimony of the

9

arresting officer that "Sides ... did admit to him ... that he was fighting with Inmate Davion Turner ... over the window being up ..." *Id.* at 2.   The sanctions levied against Sides included disciplinary segregation for 30 days and loss of all privileges for 30 days.  *Id.*

Sides contends   - without foundation -  that the disciplinary proceeding violated his constitutional right to due process.   The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that no state "shall deprive any person of life, liberty, or property without due process of law."  Thus, the Constitution is implicated only if a person is deprived of an interest protected by the Due Process Clause.

In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court abandoned the former methodology for determining the existence of a liberty interest.  Under that methodology, a federal court ascertained whether a state created a constitutionally protected liberty interest by parsing language of statutes and regulations to determine if the language was "of an unmistakably mandatory character" placing "substantive limitations on official discretion." In its renunciation of this prior case law, the Court held that federal courts must instead look to the nature of the deprivation rather than statutory or regulatory language to determine if a state created a liberty interest.

> Following *Wolff*,[4] we recognize that States may under certain
> circumstances create liberty interests which are protected by the
> Due Process Clause. . .  But these interests will be generally
> limited to freedom from restraint which, while not exceeding the
> sentence in such an unexpected manner as to give rise to
> protection by the Due Process Clause of its own force, . . .

---

[4]*Wolff v. McDonnell*, 418 U.S. 539 (1974).

> nonetheless imposes atypical and significant hardship on the
> inmate in relation to the ordinary incidents of prison life.

*Sandin v. Conner*, 515 U.S. 472, 483-484 (1995)(footnote added)(citations omitted).

Moreover, the Court specifically rejected the contention that any action taken by correctional

officials as a punitive measure encroaches upon a liberty interest protected by the Due

Process Clause. *Id.* at 484.

"Discipline by prison officials in response to a wide range of misconduct falls within

the expected parameters of the sentence imposed by a court of law." *Sandin,* 515 U.S. at

485. The loss of privileges and placement in segregation for a limited period of time "though

concededly punitive, do[] not represent a dramatic departure from the basic conditions" of

the sentence imposed upon the plaintiff. *Id.* In light of the foregoing, it is clear that the

aforementioned sanctions fail to "impose[] atypical and significant hardship on the inmate

in relation to the ordinary incidents of prison life." *Id.* at 484. Thus, the theory of liability

set forth by Sides on his due process challenge is frivolous within the meaning of 28 U.S.C.

§ 1915(e)(2)(B)(I), *see Neitzke v. Williams*, 490 U.S. 319 (1989),[5] and the defendants are

therefore entitled to summary judgment.

**B.    *Equal Protection Claim***

Sides makes the conclusory assertion that the correctional defendants subjected him

---

[5]Although *Neitzke* interpreted the provisions of 28 U.S.C. § 1915(d), the predecessor to § 1915(e)(2), the analysis contained therein remains applicable to the present statute.

to disciplinary action "without ... equal protection." *Plaintiff's Amended Complaint - Court Doc. No. 49* at 3.  To establish a claim cognizable under the Equal Protection Clause, "a prisoner must demonstrate that (1) 'he is similarly situated with other prisoners who received' more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race. *Damiano v. Fla. Parole & Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir.1986) (per curiam)." *Jones v. Ray*, 279 F.3d 944, 946-947 (11th Cir. 2001).

Moreover, to succeed on an equal protection challenge, the plaintiff must also demonstrate the existence of discriminatory intent; arbitrary application of prison rules without discriminatory intent is insufficient to demonstrate a violation of the Equal Protection Clause. *Jones v. White*, 992 F.2d 1548, 1573 (11th Cir. 1993); *E & T Realty v. Strickland*, 830 F.2d 1107 (11th Cir. 1987).

> [O]fficial action will not be held unconstitutional solely because it results in a . . . disproportionate impact. . . .  Proof of . . . discriminatory intent or purpose is required to show a violation of the Equal Protection Clause.  Discriminatory purpose . . . implies more than intent as volition or intent as awareness of consequences.  It implies that the decision maker . . . selected . . . a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group.

*Personnel Administrator of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) (footnote and citation omitted); *see also Hernandez v. New York*, 500 U.S. 352, 359 (1991).  In a case such as this one, where the plaintiff challenges actions of prison officials, exceptionally clear proof of discrimination is required. *Fuller v. Georgia Bd. of Pardons and Paroles*, 851 F.2d 1307,

1310 (11th Cir. 1988).  Evidence which merely indicates disparity of treatment is insufficient to show discriminatory intent.  *McKleskey v. Kemp*, 481 U.S. 279 (1987).

Since this case is before the court on a properly supported motion for summary judgment from the correctional defendants, Sides bears the burden of producing some evidence to show that the actions of these defendants resulted from intentional discrimination.  *Celotex*, 477 U.S. at 322-324; *Waddell*, 276 F.3d at 1279.  Sides utterly and completely fails to meet this burden as he has offered no evidence identifying any other similarly situated inmate who received more favorable treatment from the defendants.  *Brunskill v. Boyd*, 141 Fed.Appx. 771, 776 (11th Cir. 2005) (district court did not err in granting summary judgment on equal protection claim as inmate "offered no evidence that other similarly situated prisoners were treated more favorably.").  Furthermore, it is clear from the undisputed evidentiary materials that the defendants disciplined Sides solely because he engaged in a fight with another inmate.  In light of the foregoing, summary judgment is due to be granted in favor of the defendants on this claim.

**C.      *Deliberate Indifference Claims***

To prevail on a claim concerning deliberate indifference in violation of the Eighth Amendment, an inmate must, at a minimum, show that the defendants acted with deliberate indifference to his health or safety.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference ...  It is only such indifference that can offend 'evolving

13

standards of decency' in violation of the Eighth Amendment.").

When seeking relief based on deliberate indifference, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999) (for liability to attach, the official must know of and then disregard an excessive risk to the prisoner); *see also Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir.1986).

Consequently, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (defendant must have actual knowledge of a serious condition, not just knowledge of symptoms or issues, and ignore known risk to serious condition to warrant finding of deliberate indifference).

Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838. Thus, to survive summary judgment on his claims of deliberate indifference, Sides is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582

14

(11th Cir. 1995).

### 1.  **Deliberate Indifference to Safety - Failure to Protect**

Sides complains that the correctional defendants failed to protect him from attack by Turner.  Correctional officials may be held liable under the Constitution for acting with "deliberate indifference" to an inmate's safety when the official knows that the inmate faces "a substantial risk of serious harm" and with such knowledge disregards that risk by failing to take reasonable measures to abate it.  *Farmer*, 511 U.S. at 828.  "It is not, however, every injury suffered by one inmate at the hands of another that translates into a constitutional liability for prison officials responsible for the victim's safety."  *Id.* at 834.

A constitutional violation occurs only when a plaintiff establishes the existence of "a substantial risk of serious harm, of which the official is subjectively aware,  . . . and [that] the official does not respond[] reasonably to the risk'...."  *Marsh v. Butler County*, 268 F.3d 1014, 1028 (11th Cir. 2001)(en banc), *quoting Farmer*, 511 U.S. at 844.

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer,* 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter,* 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991)....  Even assuming the existence of a serious risk of harm and causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists--and the prison official must also "draw that inference."  *Farmer,* 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).

The defendant's evidentiary materials refute Sides' conclusory allegation that correctional personnel at Easterling acted with deliberate indifference to his safety. There was no evidence of hostility between Sides and Turner. The defendants acted reasonably when they addressed the security concerns at Easterling.

Nor is there evidence supporting an inference that there was a substantial risk of harm to Sides, or that the defendants ignored a perceived risk. For that reason, Side is unable to establish a critical element of his failure to protect claim, i.e., evidence that the defendants had a subjective awareness of harm or risk of harm. *Carter*, 352 F.3d at 1350. Because Sides is unable to show that defendants' deliberate indifference or reckless disregard, they are entitled to summary judgment.


2.      **Deliberate Indifference to Medical Needs**

To prevail on a claim concerning an alleged denial of adequate medical treatment, an inmate must, at a minimum, show that those responsible for providing such treatment acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir.1986). Correctional officials and medical personnel may not subject inmates to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292; *Mandel v. Doe*, 888 F.2d 783, 787 (11th Cir.1989).

16

In articulating the scope of inmates' right to be free from deliberate indifference, however, the Supreme Court has also emphasized that not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.' *Estelle*, 429 U.S. at 105, 97 S.Ct. at 291; *Mandel*, 888 F.2d at 787. Medical treatment violates the eighth amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.' *Rogers*, 792 F.2d at 1058 (citation omitted). Mere incidents of negligence or malpractice do not rise to the level of constitutional violations. *See Estelle*, 429 U.S. at 106, 97 S.Ct. at 292 ('Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.'); *Mandel*, 888 F.2d at 787-88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop*, 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference). Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment. *See Waldrop*, 871 F.2d at 1033 (citing *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir.1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991).

Moreover, "whether government actors should have employed additional . . . forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for liability under the Eighth Amendment." *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995). Thus, the liability of correctional officials and their medical care provider under the Eighth Amendment must be premised upon their deliberate indifference to an inmate's health. The plaintiff must show that the provider was aware of a substantial risk of serious harm but disregarded the risk by failing to take reasonable measures to abate it. *Farmer*, *supra*.

The evidentiary materials demonstrate that prison medical personnel assigned Sides to the hypertension chronic care clinic to assure continuous monitoring and treatment of his high blood pressure.  Immediately after the incident with Turner, medical and dental personnel examined Sides and determined that he did not require emergency treatment.  The attending personnel scheduled Sides for x-rays of the areas where he allegedly sustained injuries in the fight, i.e., his jaw and left arm, but they revealed no injuries.

Medical personnel routinely examined Sides, evaluated his condition, and responded to his myriad of complaints and requests for treatment.  *See Exhibit A to the April 5, 2005 Special Report of the Medical Defendants - Medical Records of Johnny Sides*.  The medical records also establish that attending physicians, including Dr. Darbouze, prescribed relevant medications for Sides' constipation, diarrhea, hemorrhoids and other physical ailments.  *Id*. Additionally, the evidentiary materials demonstrate that medical personnel routinely responded to Sides' requests by referring him to the dental clinic for examination and treatment.  There, dental personnel performed dental screenings, evaluations and treatment. Thus, the course of treatment undertaken by the defendants was neither grossly incompetent nor inadequate.

Sides fails to present any evidence of the defendants' knowing disregard of a substantial risk to his health or denial of adequate medical treatment for his complaints. Sides' conclusory allegation that he should have received a different mode of treatment, this assertion, without more, does not amount to deliberate indifference.  *Waldrop*, 871 F.2d at 1033; *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985).  Finally, Sides' sole

reliance upon his dissatisfaction with the medical treatment he received as a basis for relief presents "'a classic example of a matter for medical judgment' and [it is] therefore not an appropriate basis for liability under the Eighth Amendment." *Adams*, 61 F.3d at 1545.

**D.      Cruel and Unusual Punishment**

Sides complains that Mosley and Jones violated his Eighth Amendment right to be free of cruel and unusual punishment. *Plaintiff's Amended Complaint - Court Doc. No. 49* at 4. In support of this claim, Sides maintains that he is confined in a correctional facility which is understaffed and houses "hostile gang members." *Id*. 6. These claims fail to establish cruel and unusual punishment.

The Eighth Amendment proscribes those conditions of confinement which involve the wanton and unnecessary infliction of pain. *Rhodes v. Chapman*, 452 U.S. 337 (1981). Only actions which deny an inmate "the minimal civilized measure of life's necessities" are grave enough to violate the Eighth Amendment. *Id.* at 347; *see also Wilson v. Seiter*, 501 U.S. 294 (1991). The conditions about which Sides complains do not constitute the grave deprivations contemplated by the Supreme Court. Consequently, the defendants are entitled to summary judgment on this claim.

**E.      Respondeat Superior**

Sides' attempt to impose liability upon the defendants under the theory of respondeat superior or on the basis of vicarious liability is futile. He is entitled to no relief because

"neither respondeat superior nor vicarious liability exists under § 1983." *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla*., 402 F.3d 1092, 1116 (11th Cir. 2005); *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 690-92, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978); *Harris v. Ostrout*, 65 F.3d 912, 917 (11th Cir. 1995); *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994); *LaMarca v. Turner,* 995 F.2d 1526, 1538 (11th Cir.1993), *cert. denied,* 510 U.S. 1164, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994).

## V.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.      The defendants' motions for summary judgment be GRANTED.

2.      This case be dismissed with prejudice.

3.      The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before June 14, 2006 the parties may file objections to the Recommendation.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking

on appeal factual findings in the Recommendation accepted or adopted by the District Court

except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404

(5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also*

*Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding

precedent all decisions of the former Fifth Circuit handed

down prior to the close of business on September 30, 1981.

Done this 1st day of June, 2006.

/s/ Vanzetta Penn McPherson
VANZETTA PENN MCPHERSON
UNITED STATES MAGISTRATE JUDGE